UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN HANAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0149-B |
| | § | |
| CRETE CARRIER CORPORATION and DORN KNAPP, | § § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Strike the Report and Opinions of Walter A. Guntharp, Jr. and Jason Marcetti, M.D. (Docs. 53 & 56). Plaintiff commissioned Mr. Guntharp to opine on Defendant Dorn Knapp's conduct before, during, and after the accident, and Dr. Marcetti on Plaintiff's future medical expenses. For the reasons that follow, Defendants' Motion to Strike the Report and Opinions of Walter A. Guntharp, Jr. (Doc. 53) is **GRANTED in part and DENIED in part**, and Defendants' Motion to Strike the Report and Opinions of Dr. Jason Marcetti (Doc. 56) is **DENIED**.

## I.

## BACKGROUND[1]

On June 18, 2018, Susan Hanan was traveling on Interstate 45 in Navarro County, Texas, when her vehicle was hit by Defendant Crete Carrier Corporation's tractor trailer. Doc. 4, Pl.'s Original Pet., ¶ 6. The vehicle was being driven by Defendant Knapp, who was an employee of Crete

---

[1] The facts are taken from Plaintiff's petition. *See* Doc. 4, Original Pet.

at the time. *Id.* Hanan further alleges that she was hit when "Knapp changed lanes unsafely into the lane in which [Hanan] was lawfully driving, crashing into [Hanan's] vehicle at a high rate of speed." *Id.*

Hanan subsequently brought this lawsuit against both Crete and Knapp. *Id.* ¶¶ 4–5. Hanan alleges that she suffered severe injuries to her head, neck, back, and other body parts as a result of the accident. *Id.* ¶ 6.

Hanan originally brought six causes of action, five of which survived Defendants' Motion for Summary Judgment (Doc. 42): (1) negligence and gross negligence against both Defendants; (2) negligent hiring against Crete; (3) negligent training against Crete; (4) negligent supervision, retention, and monitoring against Crete; and (5) negligent entrustment against Crete. *See* Doc. 91, Mem. Op. & Order, 2, 16.

To further her case, Hanan retained Mr. Guntharp and Dr. Marcetti as experts. Mr. Guntharp, Jr. was commissioned to opine on Mr. Knapp's conduct before, during, and after the car accident in relation to commercial truck driving standards. Doc. 71, Pl.'s App., Ex. C (Guntharp Report). Dr. Marcetti was commissioned to opine on the amount of Hanan's future medical expenses as a result of the car accident. Doc. 68, Pl.'s App., Ex. C (Marcetti Report).

Defendants now move to exclude both Mr. Guntharp and Dr. Marcetti's testimony (Docs. 53 & 56). All briefing has been submitted, and the motions are now ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for testimony by an expert witness if: (1) that witness is "qualified as an expert by knowledge, skill, experience, training, or education"; (2) "the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (3) "the testimony is based on sufficient facts or data"; (4) "the testimony is the product of reliable principles and methods"; and (5) "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. The "testimony is admissible only if it is both relevant and reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). The party offering expert testimony bears the burden of establishing by a preponderance of the evidence that the testimony satisfies Rule 702. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

"The court decides these motions in its role as gatekeeper concerning the admissibility of expert testimony." *Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1001 (N.D. Tex. 2018) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.

### ANALYSIS

*A.     Walter A. Guntharp's Testimony*

Mr. Guntharp opined that (1) Defendant Knapp was intentional, or at the very least reckless, leading up to the accident; (2) if not for Defendant Knapp's actions, the accident would not have occurred; and (3) Defendant Knapp did not comply with industry standards while driving Defendant Crete's tractor trailer leading up to the accident. *See* Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 4–5.

Defendants raise four grounds to strike Mr. Guntharp's testimony: Mr. Guntharp's opinions (1) do not show how compliance with applicable federal and state laws and industry standards are relevant to the case and "do not identify or analyze any relevant laws, regulations, standards or practices[;]" (2) improperly parrot and bolster the testimony of fact witnesses; (3) "are speculative and not tied to the facts through proper analysis[;]" and (4) offer accident reconstruction conclusions for which Mr. Guntharp is not qualified. Doc. 53, Defs.' Mot., 1.

Hanan responds by arguing that: "(1) Mr. Guntharp's opinions are reliable because there is no analytical gap between the facts [of the case] and his opinions"; (2) Mr. Guntharp is qualified to offer opinions in the case, and is not attempting to reconstruct the scene of the accident; and (3) "virtually all of Defendants" objections "go towards the weight, and not the admissibility, of Mr. Guntharp's opinions." Doc. 70, Pl.'s Resp., 7–12.

The Court concludes that Mr. Guntharp's testimony as to Defendant Knapp's state of mind and the cause of the accident is inadmissible expert testimony and must be stricken from the record. This includes all of conclusions (1), (2), (5), (6), (7), (8), and (9), and portions of conclusions (3) and (4). *See* Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 4–5. As to conclusion (3), Mr. Guntharp's conclusion that "[i]nstead, with reckless disregard for the safety of Ms. Hanan, [Defendant Knapp] operated his large tractor-trailer in an aggressive manner that ultimately resulted in this crash" must be stricken. *See id.* at 5. As to conclusion (4), the Court strikes Mr. Guntharp's conclusions that "Mr. Knapp's actions as described by witness Brown were representative of road rage and an intentional attempt to prevent Ms. Hanan from entering his lane of travel" and that "[t]hese actions . . . represented outrageous conduct on the part of Mr. Knapp." *See id.* Finally, conclusions (1) and (5) must be stricken as well, as they are not helpful to a jury. *See id.*

1. <u>Mr. Guntharp's opinions as to Defendant Knapp's state of mind in conclusions (2), (7), and portions of conclusions (3) and (4) are all inadmissible expert testimony and must be stricken.</u>

Conclusions (2), the above portions of (3) and (4), and (7) all opine on Defendant Knapp's state of mind at the time of the accident. *See, e.g.*, *id.* at 4–5, Conclusion (2) ("Mr. Knapp intentionally attempted to prevent Ms. Hanan from passing . . . .); Conclusion (3) (concluding that Knapp was acting with "reckless disregard for the safety of Ms. Hanan); Conclusions (4) and (7).

"[A] trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury." *Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (per curiam)). A trial court may do so because "[a]n expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind." *Id.* (alterations in original) (citing *Marlin*, 248 F. App'x at 541).

In *Fisher*, the court considered expert testimony that opined that a party "knew that the death or serious injury of its drivers was substantially certain" and that the party's actions "[rose] to the level of specific intent." *Id.* at *3. The court concluded that these were "evaluations of the mental state of the defendants' employees" and were "not [] helpful to a trier of fact . . . ." *Id.* Accordingly, the court granted the motion to strike the expert testimony. *Id.*

Here, the Court is confronted with the same type of testimony as in *Fisher*. Mr. Guntharp's testimony concludes, for example, that Defendant Knapp's actions were "intentional attempt[s] to prevent Ms. Hanan from passing" and "represented a conscious and reckless disregard for the safety of Ms. Hanan." Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 4–5. The Court thus **GRANTS** Defendants' motion to strike (Doc. 53) the aforementioned conclusions on state of mind, and all

other portions of the report that opine on Defendant Knapp's state of mind. *See, e.g.*, *id.* at 6 ("Mr. Knapp . . . acted in a reckless manner . . . .").

    3.    <u>Conclusions (1) and (5) do not require the testimony of an expert and must be stricken.</u>

Conclusion (1) of Mr. Guntharp's report states, "[o]n the day of the crash, Mr. Knapp was in the scope of his employment with Crete Carrier Corporation (Crete)." *See id.* at 4. However, Mr. Guntharp does not explain the bases of this conclusion anywhere in his report. *See id.* at 4–8. Thus, this conclusion must be stricken. *See* FED. R. EVID. 702(d) (explaining that "the expert [must] ha[ve] reliably applied the principles and methods [giving rise to his testimony] to the facts of the case").

Additionally, Conclusion (5) of Mr. Guntharp's report states, in full:

> After the crash, Mr. Knapp communicated via CB radio with Mr. Brown, a truck driver who had witnessed the crash and denied striking the Hanan vehicle. He then continued down the roadway for approximately a mile before pulling over onto the shoulder and awaiting the police.

Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 5. Such facts do not require the help of an expert for the jury to understand, and thus this conclusion is inadmissible. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D. W.Va. 2013) ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded.") (quotations and internal citation omitted).

Thus, the Court **GRANTS** Defendants' motion (Doc. 53) as to conclusions (1) and (5) of Mr. Guntharp's testimony.

    4.    <u>Mr. Guntharp's opinions that Mr. Knapp's actions were the cause of the crash in conclusions (2), (3), (6), (7), (8), and all of conclusion (9) must be stricken</u>.

The Court strikes all conclusions as to the cause of the crash. This includes portions of

conclusions (2), (3), (6), (7), and (8), and all of conclusion (9). *See* Doc. 71, Pl.'s App., Ex. C (Gunhtarp Report), 4–5. Similar to the rationale behind the bar on state-of-mind testimony explained above, asking an expert witness to opine on the legal cause of an accident "is [an] issue the jury must resolve . . . ." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Although Federal Rule of Evidence 704 allows testimony that might "embrace[] an ultimate issue to be decided by the trier of fact," *id.* at 240 (quoting FED. R. EVID. 704), "the rule [is not] intended to allow a witness to give *legal* conclusions." *Id.* at 240 (emphasis in original).

Yet, opining on legal conclusions is exactly what Mr. Guntharp has done in his report. Like in *Owen*, "there [is] no dispute in the evidence as to the factual cause of the mishap," which is the accident between Hanan and Defendant Knapp. *See id.*; *see also* Doc. 43, Def.'s Br. in Supp. of Mot. for Summ. J., 2 ("This lawsuit arises from a sideswipe accident that occurred on June 18, 2018 between [Hanan] and a Crete tractor trailer rig driven by Dorn Knapp."). Thus, it is "obvious" that Mr. Guntharp is attempting to opine on whether Mr. Knapp's actions were the but-for and proximate cause of the accident. *See Owen*, 698 F.2d at 239–40. For example, Mr. Guntharp concludes many times, using different words, that "[h]ad Mr. Knapp acted in a safe, professional manner, this crash would not have occurred." Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 5. The Court will ask the jury—not a witness, even one who is an expert—to make such conclusions. *See Owen*, 698 F.2d at 240 ("Whether or not [the plaintiff's] acts were the 'cause of the accident' is the issue the jury must resolve . . . .").

For the foregoing reasons, Mr. Guntharp's testimony that Mr. Knapp's actions caused the accident (or alternatively, if Mr. Knapp did not act in a certain way, the accident would not have occurred) must be stricken. The Court **GRANTS** Defendants' motion to strike (Doc. 53) to this

extent.

> 5. Mr. Guntharp's opinions about whether Mr. Knapp complied with driving standards in conclusions (3) and (4) are admissible.

Mr. Guntharp's conclusions that Defendant Knapp did not follow commercial driver standards before or during the accident are admissible. This includes the following conclusions:

> 3. The construction zone and associated traffic conflicts required that a commercial driver be especially careful. Mr. Knapp failed to meet this standard . . . .
>
> 4. . . . These actions are far outside the scope of industry expectations . . . .

Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 5. Unlike Mr. Guntharp's other conclusions and testimony, these conclusions satisfy Rule 702's requirements for expert testimony. First, Mr. Guntharp is qualified as an expert. He has worked as a field safety representative for a transportation insurance company, and has provided defensive driving courses to commercial drivers for the state of Indiana. *Id.* at 30. He has been involved in the commercial transportation industry since 1976. *Id.*; *see also* FED. R. EVID. 702 (listing experience as one way in which someone can qualify as an expert).

Next, in his report, Mr. Guntharp listed the materials relevant to the accident that he reviewed, and the knowledge of commercial driving standards that he has acquired through his experience in the industry. *See* Doc. 71, Pl.'s App., Ex. C (Guntharp Report), 4–5; *see also* FED. R. EVID. 702 (explaining that to be admissible, expert testimony must be "based on sufficient facts or data," and "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case"). Thus, the Court disagrees with Defendants' arguments that Mr. Guntharp "does not mention what these industry standards are; where he found them; how they have been tested, applied or otherwise shown to be reliable; how they are relevant to this case; or how he analyzed or evaluated Defendants' compliance with them."

Doc. 54, Def.'s Br., 7–8. Instead, Defendants' arguments go to the weight, not the admissibility, of Mr. Guntharp's testimony. *See Lofton v. McNeil Consumer & Speciality Pharms.*, 2008 WL 4878066, at *4 (N.D. Tex. July 25, 2008) (refusing to exclude expert testimony when the "validity of expert testimony . . . [was] a question of weight, not admissibility") (citation omitted).

Additionally, Defendants argue that "Defendants' general compliance with regulations, practices and standards is not relevant to this lawsuit." Doc. 54, Defs.' Br., 3. The Court disagrees. Compliance with standards of care in an industry is relevant to whether a defendant breached the standard of care in a negligence case. *See Idar v. Cooper Tire & Rubber Co.*, 2010 WL 3702579, at *3 (S.D. Tex. Sept. 15, 2010) ("In negligence claims, courts often look to compliance with industry standards to determine if a defendant was negligent.") (citation omitted).

Consequently, the Court **DENIES** Defendants' motion to strike (Doc. 53) insofar as it seeks to strike Mr. Guntharp's testimony related to Defendant Knapp's noncompliance with commercial driving standards.

B.      *Dr. Jason Marcetti's Testimony*

Dr. Marcetti testified that Ms. Hanan's future medical requirements would be $302,680.61. Doc. 68, Pl.'s App., Ex. C (Marcetti Report), 1. Dr. Marcetti included in his calculations (1) physician services; (2) routine diagnostics; (3) medications; (4) laboratory studies; (5) rehabilitation services; and (6) acute care services. *Id.*

Defendants raise two grounds to strike Dr. Marcetti's testimony. Defendants note that when calculating Hanan's future medical expenses, Dr. Marcetti failed to analyze (1) charge rates by Hanan's specified providers; and (2) the availability of Medicare. Doc. 57, Defs' Br., 3–6. Thus, Defendants argue that Dr. Marcetti's expert testimony is not reliable as required by *Daubert. Id.* at

5.

First, Defendants believe that in calculating the cost of Hanan's future medical care, Dr. Marcetti failed to consider Hanan's "insurance status and the rate negotiated by the provider with the insurer." *Id.* at 4 (citing *Haygood v. De Escabedo*, 356 S.W.3d 390, 393–94 (Tex. 2011)). Defendants argue that such considerations are required under Texas law, specifically that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred . . . ." Doc. 57, Defs.' Br., 4 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.0105). Defendants suggest that by failing to take into consideration what Hanan's providers will actually charge, or what Hanan will actually pay, Dr. Marcetti's "methodology is not reliable and his analysis is not relevant or helpful to the jury in this case . . . ." *Id.* at 4–5.

Second, and relatedly, Defendants contend that in his calculations, Dr. Marcetti does not account for the fact that Hanan is a Medicare recipient. *Id.* at 5. Thus, Defendants believe, Dr. Marcetti's opinion "is not based on and does not relate to the facts at issue and is not relevant to any issue in the case." *Id.* Defendants rely on *Haygood v. De Escabedo*, where the Texas Supreme Court concluded that imposing damages on a defendant based on expenses that a health care provider would not be entitled to charge would "create a windfall for the plaintiff and is inconsistent with the concept of compensatory damages." Doc. 57, Defs.' Br., 5 (citing *Haygood*, 356 S.W.3d at 396–97).

The Court finds Defendants' arguments unavailing. As Hanan points out, and Defendants concede, *Haygood* and Section 41.0105 set out rules for past, not future, medical expenses. *See* Doc. 67, Pl.'s Resp., 13–14; Doc. 78, Defs.' Reply, 3. Defendants argue in their reply that their "argument is not simply a Section 41.0105 argument." Doc. 78, Defs.' Reply, 3. But that's not what they say in their original brief on this motion. *See* Doc. 57, Defs.' Br., 4 ("That is, Marcetti does not show, *as*

*required by* § 41.0105, what charges [Hanan] will actually pay or incur for her future care.") (emphasis added).

Nor is the Court persuaded by Defendants' argument that "there is no principled reason why, when [information regarding Medicare and insurance status, among other factors] is available for future medical expenses, such factors should not be considered for future costs as well." Doc. 78, Defs.' Reply, 4. Such considerations are not required under Texas law. "In order to recover for future medical expenses under Texas law, the plaintiff must show there is a reasonable probability that such medical expenses will be incurred in the future." *Koenig v. Beekmans*, 2017 WL 7732809, at *3 (W.D. Tex. Mar. 23, 2017). Thus, the standard for calculating past medical expenses is different than that for future medical expenses. In *Koenig*, the defendants argued that the plaintiff's expert did not consult with the plaintiff's medical providers, but instead used a database "to establish projected medical costs." *Id.* The court there rejected this as a basis for striking the expert, as the plaintiff had evidence that the expert's methodology in calculating the future costs was "sound." *Id.*

Here, Dr. Marcetti *did* use Hanan's select providers in calculating future medical expenses. *See* Doc. 68, Pl.'s App. Ex., C. (Marcetti Report), 6–12. And Dr. Marcetti identified the sources from which he obtained the predicted medical costs. *See, e.g., id.* at 30–32 (calculating the average cost of various medications in the Dallas area); *cf. Albert ex. rel Doe v. U.S. Dep't of the Army*, 2019 WL 5783420, at *3 (W.D. Tex. Nov. 5, 2019) (striking part of the expert's testimony on future medical costs because the expert failed to identify the "sources regarding costs associated with other [anticipated future] treatments").

Defendants' issue is with *how* Dr. Marcetti used Hanan's select providers in calculating her medical expenses. This argument goes to the weight, not the admissibility, of Dr. Marcetti's

testimony. *See Koenig*, 2017 WL 7732809, at *3 (rejecting the motion to strike because "[w]hether or not the estimate costs of future medical care are made based on [local] rates goes to the weight not the admissibility of the testimony"). Defendants' reply proves as much: they believe that the Medicare and other factors should have been considered by Dr. Marcetti. Doc. 78, Defs.' Reply, 4. But, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact." *Koenig*, 2017 WL 7732809, at *3.

Thus, the Court **DENIES** Defendants' motion to exclude Dr. Marcetti's testimony (Doc. 56).

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike the testimony of Mr. Guntharp (Doc. 53) is **GRANTED in part** and **DENIED in part**. The parts of Mr. Guntharp's report that opine on Defendant Knapp's state of mind and whether his actions were the cause of the accident are **STRICKEN.** Additionally, conclusions (1) and (5) are also **STRICKEN.** However, the Court **DENIES** the motion to strike Mr. Guntharp's report as it relates to Defendant Knapp's noncompliance with commercial safety standards. It is further **ORDERED** that Defendants' motion to strike the testimony of Dr. Marcetti (Doc. 56) is **DENIED.**

**SO ORDERED.**

**SIGNED: February 6, 2020**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE