UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSAN HANAN,                            §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §     CIVIL ACTION NO. 3:19-CV-0149-B
                                        §
CRETE CARRIER CORPORATION               §
and DORN KNAPP,                         §
                                        §
        Defendants.                     §

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Susan Hanan's Motion for New Trial Under Rule 59, and Alternative Motion for Relief from Final Judgment Under Rule 60(b)(3) (Doc. 221). For the reasons that follow, the Court **DENIES** Hanan's motion in its entirety.

## I.

## BACKGROUND

On June 18, 2018, Plaintiff Susan Hanan and Defendant Dorn Knapp were involved in a motor vehicle accident on Interstate 45 southbound outside of Corsicana, Texas. Doc. 196, Pretrial Order, 3. At the time of the accident, Knapp was a commercial truck driver for Defendant Crete Carrier Corporation (Crete Carrier) and was driving in the course and scope of his employment with Crete Carrier. *Id.*

On November 20, 2018, Hanan filed a petition in Texas state court against Knapp and Crete Carrier, alleging: (1) negligence and gross negligence against both Defendants; (2) negligence per se against both Defendants; (3) negligent hiring against Crete Carrier; (4) negligent training against

Crete Carrier; (5) negligent supervision, retention, and monitoring against Crete Carrier; (6) negligent entrustment against Crete Carrier; and (7) ratification against Crete Carrier.[1] Doc. 4, Defs.' Suppl., 3–7 (petition). In her petition, Hanan sought damages "in excess of $1,000,000.00[.]" *Id.* at 8. Defendants removed the case to this Court on January 18, 2019, *see generally* Doc. 1, Notice of Removal, and a jury trial was scheduled to begin on March 8, 2021.

Prior to trial, the Court granted Defendants' motion in limine to exclude a Crete Carrier document (the "Warning Notice") relating to its internal investigation of the accident between Knapp and Hanan. Doc. 205, Order, 5. In addition, the Court granted, over Defendants' objections, Hanan's request to admit into evidence the transcripts of telephone calls made to emergency services on June 18, 2018—the day of the accident. *See* Doc. 236, Trial Tr. Vol. 1, 24:4–26:9. These calls were made by Hanan, Knapp, and an eyewitness—Gregory Brown. *See generally* Doc. 222, Pl.'s App., Ex. B., 4–16.

The case was tried before a jury from March 8, 2021 to March 10, 2021. On March 10, 2021, the jury rendered a verdict (Doc. 216) in favor of Defendants. Notably, the jury found that the collision between Knapp and Hanan's vehicles was caused by Hanan's negligence, but not by any negligence on the part of Knapp.[2] *See* Doc. 216, Jury Verdict, 10. On the following day, the Court entered a Final Judgment and ordered that Hanan take nothing by her suit against Defendants. Doc. 217, Final J., 1.

---

[1] The Court subsequently granted Defendants' motion for summary judgment on Hanan's negligence-per-se and ratification claims. Doc. 91, Mem. Op. & Order, 6–8, 15–16.

[2] Because Knapp was not negligent, the jury was instructed not to answer further questions related to Crete Carrier's alleged negligence. *See* Doc. 216, Jury Verdict, 10.

On April 8, 2021, Hanan moved for a new trial and alternatively moved for relief from the Court's Final Judgment. *See generally* Doc. 221, Pl.'s Mot. In her motion, Hanan alleges that "two critical evidentiary errors prevented [her] from fully presenting her case." *Id.* at 1. She also alleges that her requested relief is warranted because "Knapp deceived the jury when he presented throughout trial . . . as having a significant, painful arm injury." *Id.* Defendants filed a response (Doc. 240) on May 24, 2021, and Hanan filed a reply (Doc. 243) on June 7, 2021. Hanan's motion is ripe for review.

## II.

## LEGAL STANDARDS

A.   *Rule 59*

Federal Rule of Civil Procedure 59(a) allows a party to move for a new trial. In deciding whether to grant a new trial, the Court conducts an "assessment of the fairness of the trial and the reliability of the jury's verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). Although "Rule 59 does not specify or limit the grounds necessary to support such a decision," *id.*, the Court may grant a new trial if it finds that "the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed[.]" *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985) (citations omitted). "The party asserting the error has the burden of proving that the error was prejudicial." *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (citation omitted).

Ultimately, whether to grant a new trial rests "within the sound discretion of the trial court[.]" *Foradori v. Harris*, 523 F.3d 477, 503–04 (5th Cir. 2008) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982)). This discretion is even broader when the trial court denies,

rather than grants, such a motion. *See Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir.2005) ("Where a motion for a new trial is granted, we scrutinize that decision more closely.").

B.      *Rule 60(b)(3)*

Federal Rule of Civil Procedure 60(b)(3) permits the Court to "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud . . . , misrepresentation, or misconduct by an opposing party[.]" "One who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (citations omitted). Further, "[t]he conduct complained of must [have] prevented the losing party from fully and fairly presenting his case or defense." *Id.* Like granting a new trial, relieving a party from a final judgment rests "within the discretion of the trial court[.]" *Id.* at 1346.

## III.

## ANALYSIS

Hanan requests a new trial under Rule 59, alleging "two critical evidentiary errors that, whether viewed individually or collectively, prejudiced Ms. Hanan's trial." Doc. 221, Pl.'s Mot., 2. She also requests a new trial under Rule 60(b)(3) for what she alleges were "Knapp's misrepresentations to the jury" that "prevent[ed] Ms. Hanan from fully and fairly presenting her case." *Id.* The Court first addresses Hanan's Rule 59 request and denies it. It next addresses Hanan's Rule 60(b)(3) request and denies it as well.

A.      *Hanan's Request for a New Trial Under Rule 59 Is Denied.*

Hanan seeks a new trial under Rule 59 for what she claims were "two critical evidentiary errors" at trial that "prevented [her] from fully presenting her case." Doc. 221, Pl.'s Mot., 1. First,

she challenges the Court's exclusion of the Warning Notice. *Id.* at 3. Next, Hanan challenges what she describes as "[t]he Court's improper refusal to allow Ms. Hanan to question witnesses with the transcript of the 911 calls[.]" *Id.* at 11. The Court rejects Hanan's assertions of harmful error and denies her request for a new trial under Rule 59.

     1.     <u>Exclusion of the Warning Notice does not warrant a new trial.</u>

First, Hanan argues that "[b]ecause of the [Warning Notice]'s significant evidentiary value to Ms. Hanan's case, the Court's erroneous exclusion of this exhibit prejudiced the trial." Doc. 221, Pl.'s Mot., 3.

On June 18, 2018—the day of the collision—Crete Carrier issued the Warning Notice, labeled "Warning Notice Form for Company Drivers," to Knapp, warning Knapp that "[a]ny further preventable accidents . . . may result in disciplinary action[.]" Doc. 222, Pl.'s App., 2. In describing the incident, the Warning Notice states that Knapp "operated his tractor and trailer combination in such a manner as to cause the equipment to sideswipe a vehicle[.]" *See id.*

Before trial, Defendants filed a motion in limine, seeking to exclude the Warning Notice from evidence under Federal Rules of Evidence 403 and 407. Doc. 163, Defs.' Mot. in Limine, 7. After reviewing the parties' briefing on the motion, and hearing oral arguments at the pre-trial conference, the Court granted Defendants' motion and excluded the Warning Notice from being introduced at trial. Doc. 205, Order, 5.

The Court did not err by excluding the Warning notice. Even if it did, any error was harmless. Either way, exclusion of the Warning Notice does not warrant a new trial under Rule 59(a).

*i. The Court did not err.*

To start, the Court did not err. In excluding the Warning Notice, the Court acknowledged that "[a] split [in] case law exists whether the conclusions of a post[-]accident investigation are admissible under [Rule] 407." Doc. 234, Pretrial Tr., 33:11–13 (quoting *Villalba v. Consol. Freightways Corp. of Del.*, 2000 WL 1154073, at * 6 (N.D. Ill. Aug. 14, 2000)). And while the Court found that the Warning Notice was inadmissible under Rule 407 as a subsequent remedial measure, it stated that "even if it's not, it's too prejudicial." *Id.* at 34:11–13. Indeed, the Court found that "the probative value is substantially outweighed by the danger of unfair prejudice" because "the risk is high that the jury would substitute Crete [Carrier]'s findings," as provided in the Warning Notice, "for its own judgment." Doc. 205, Order, 5 (quotation marks and citations omitted). Because "[c]ausation is to be determined by the jury," this risk rendered the Warning Notice inadmissible under Rule 403. *Id.* Thus, the Court found that the Warning Notice was inadmissible under Rule 403 as well as Rule 407. *Id.*

Hanan argues that the Warning Notice "was admissible under" Rules 403 and 407, and was "admissible impeachment evidence against [Crete Carrier]'s corporate representative[.]" Doc. 221, Pl.'s Mot., 3. However, the Court's findings as to the admissibility of the Warning Notice remain unchanged.

Hanan "clearly wants the jury to infer from the results of the [Warning Notice] that [Knapp] was negligent." *Villalba*, 2000 WL 1154073, at *6. Indeed, Hanan views the Warning Notice as a statement on behalf of Crete Carrier "that their driver was at fault" and "that their driver caused an accident or made an unsafe lane change." Doc. 233, Pretrial Tr., 73:6–10. Hanan's counsel stated that Crete Carrier was "now coming into this [C]ourt, and . . . taking a different position." *Id.* at

73:11–12. Thus, Hanan wished to use this evidence to counter Crete Carrier's position that Knapp was not at fault and did not make an unsafe lane change. In other words, Hanan wished to use the Warning Notice to counter Crete Carrier's position that Knapp was not negligent.

However, "[t]he problem with that inference is that the standard for determining preventability and the standard for determining negligence . . . are not necessarily the same." *Villalba*, 2000 WL 1154073, at *6. Indeed, Hanan asserted a claim for negligence against Defendants, claiming that Knapp was negligent in the operation of his vehicle. *See* Doc. 4, Defs.' Suppl., 1–10 (petition). At trial, then, Crete Carrier's position was that Knapp was not negligent. *See id.* at 20–25 (answer). However, the Warning Notice says nothing of negligence—it states only that the accident was "preventable" and that Knapp "cause[d] the [tractor and trailer] to sideswipe a vehicle[.]" *See* Doc. 222, Pl.'s App., 2. As Crete Carrier's corporate representative testified outside the presence of the jury, Crete Carrier "use[s] the [American Trucking Association ("ATA")] Preventability Guidelines" in issuing warnings to drivers, such as the Warning Notice. Doc. 236, Trial Tr. Vol. 1, 91:1. These guidelines employ a preventability standard that asks whether "the driver d[id] everything possible to avoid the accident[.]" *Id.* at 91:7–10. This is different than the standard for ordinary negligence, which asks whether the driver did "that which a person of ordinary prudence would not have done under the same or similar circumstances, or [failed] to do that which a person of ordinary prudence would have done under the same or similar circumstances[.]" *Sears, Roebuck & Co. v. Talley*, 239 F.2d 82, 84 (5th Cir. 1956) (citation omitted).

Because the preventability standard did not "translate to negligence and because [the Warning Notice was] an internal document of [Crete Carrier] saying it was a preventable accident," the Court found that the evidence was "more prejudicial than it [was] probative." Doc. 236, Trial

Tr. Vol. 1, 92:2–7. Indeed, a document stating that Knapp caused the collision with Hanan by failing to do everything possible to avoid the accident was likely to confuse the jury—which was charged with determining whether Knapp caused the collision by acting negligently. *See* Doc. 215, Jury Instructions, 10. This confusion was especially likely in light of Hanan's desire to use the Warning Notice to prove liability by showing that Crete Carrier "sa[id] [Knapp]'s at fault." Doc. 234, Pretrial Tr., 32:3–4. Accordingly, the Court properly excluded the Warning Notice under Rule 403. Because the Warning Notice was properly excluded under Rule 403, the Court need not address its alternative basis for excluding the Warning Notice under Rule 407.

And though Hanan argues that the Warning Notice should have been admitted in order to impeach one of Defendants' witnesses, Doc. 221, Pl.'s Mot., 9, "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Whitehurst v. Wright*, 592 F.2d 834, 339 (5th Cir. 1979). As discussed, the Warning Notice was inadmissible under Rule 403. Hanan could not simply admit it as impeachment evidence to circumvent this ruling. *See id.*

Therefore, the Court properly excluded the Warning Notice after determining that the risk of unfair prejudice substantially outweighed its probative value. Thus, this evidentiary ruling was not made in error, and does not merit a new trial.

> ii.    *Any error was harmless.*

Even if the Court did err in excluding the Warning Notice, the error was harmless. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib.,*

*Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). Because the error that Hanan alleges was harmless, a new trial is not warranted.

Insofar as Hanan sought to use the Warning Notice to show that Knapp failed to abide by Crete Carrier's own safety standards or the standards of the ATA, the Court permitted Hanan to introduce other evidence of Knapp's failure to do so. Indeed, the Court denied Defendants' motion in limine "to exclude evidence of Crete [Carrier]'s internal safety policies and compliance with said policies[.]" Doc. 205, Order, 5. While the Court "warn[ed] [Hanan] against stating or implying that internal policies are determinative of the applicable standard of care," the Court permitted the evidence because "'such policies and standards are probative as to the controlling standard of care' in a negligence case." *Id.* (quoting *Schurman v. Panola-Harrison Elec. Coop., Inc.*, 2006 WL 8456468, at *1 (W.D. La. June 6, 2006); *Mills v. Angel*, 995 S.W.2d 262, 268 (Tex. App.—Texarkana June 10, 1999, no pet.)).

To show that Knapp did not comply with Crete Carrier's internal safety policies, much of Hanan's witness examination focused on the "lane of least resistance." *See, e.g.,* Doc. 236, Trial Tr. Vol. 1, 72:10–74:3; Doc. 239, Trial Tr. Vol. 2-A, 34:7–35-21; Doc. 237, Trial Tr. Vol. 2, 113:24–114:14. As explained by Crete Carrier's corporate representative on cross-examination, the lane of least resistance, a practice that Crete Carrier trains its drivers to follow, "is defined as the lane that gives the driver the most visibility and the least amount of potential conflict." Doc. 236, Trial Tr. Vol. 1, 73:11–13. Moreover, when questioning Knapp at trial about the lane of least resistance, Hanan's counsel was permitted to impeach Knapp with his own deposition testimony, wherein he stated that the lane of least resistance was the right lane, even though he was driving in the middle lane—a lane that Knapp agreed was "subject to conflict[.]" *See* Doc. 239, Trial Tr. Vol. 2-A,

34:7–35:21. Additionally, Hanan's expert witness opined that the lane of least resistance "under the[] circumstances . . . would have been in the rightmost lane," but that Knapp "was in the center lane." Doc. 237, Trial Tr. Vol. 2, 113:24–114:14. Thus, any evidentiary value that the Warning Notice offered is diminished in light of the other evidence tending to demonstrate the same point.

Exclusion of the Warning Notice constitutes harmful error "only if exclusion affects [Hanan's] substantial rights." *Barnes v. Ergon Refin., Inc.*, 38 F.3d 568, 1994 WL 574190, at *3 (5th Cir. Oct. 4, 1994) (table opinion) (per curiam) (citing Fed. R. Evid. 103(a)). However, "after weighing the evidence actually admitted," the Court finds that the admission of the Warning Notice would not "have added appreciable weight to the contention" at issue. *See id.* (quoting *Garcia v. Gloor*, 618 F.2d 264, 271–72 (5th Cir. 1980)). Even if it "contain[ed] some information not completely duplicative" of the additional evidence, the Warning Notice would not have "add[ed] any appreciable weight to [Hanan's] claim of" negligence. *See id.*

And though Hanan wished to use the Warning Notice to impeach Crete Carrier's corporate representative, by showing that "while Crete [Carrier] is taking the position that their driver was not involved in this accident, in the past they have taken the opposite position," the Warning Notice does not have such an effect. As explained, Crete Carrier's position at trial is that Knapp was not negligent, *see* Doc. 4, Defs.' Suppl., 20–25 (answer), not that Knapp failed to prevent the accident according to the ATA Preventability Guidelines. As the Warning Notice states only that the accident was "preventable," this evidence would not show a prior inconsistent position on behalf of Crete Carrier. *See* Doc. 222, Pl.'s App., 2.

Accordingly, excluding the Warning Notice did not affect Hanan's substantial rights, and the Court did not commit harmful error even if the exclusion was erroneous. Therefore, the Court denies

Hanan's request for a new trial on the basis of the exclusion of the Warning Notice.

      2.    <u>The alleged exclusion of the 911 transcripts does not warrant a new trial.</u>

Next, Hanan argues that a new trial is warranted because "[t]he Court erred in excluding the 911 transcripts." Doc. 243, Pl.'s Reply, 7. The Court disagrees. First, the Court did not exclude the 911 transcripts. Second, even if it had, that error would be harmless.

      *i. The Court did not exclude the 911 transcripts.*

Despite Hanan's assertion of error, the Court did not exclude the 911 transcripts to which Hanan refers. At the pretrial conference, the Court admitted the 911 transcripts in their entirety—over Defendants' objections—into evidence as Plaintiff's Exhibit 23. *See* Doc. 236, Trial Tr. Vol. 1, 24:4–26:9. At trial, the Court did sustain an objection by Defendants' counsel regarding Hanan's counsel's attempt to question Knapp with Brown's 911 transcript. *Id.* at 39:8–11; *see also* Doc. 239, Trial Tr. Vol. 2-A, 99:17–22. However, the Court did not wholly exclude the evidence from trial as Hanan suggests.

Indeed, the record shows that the 911 transcripts were submitted to the jury in their entirety. *See* Doc. 228, Court's Exhibit List, 2. After the parties concluded their closing arguments and the jury charge was read, all parties confirmed that the 911 transcripts were admitted into evidence and should be submitted to the jury. Doc. 238, Trial Tr. Vol 3, 272:19–22 (Hanan's counsel stating "Plaintiff's [Exhibit] 23 has been admitted into evidence," and Defendants' counsel stating that they agreed), 264:19–23 (Hanan's counsel again confirming the admission of the 911 transcripts). Acknowledging this, Hanan now claims that her counsel's statements confirming the admission of the 911 transcript were made in error. Doc. 243, Pl.'s Reply, 7. Thus, Hanan suggests that the Court's List of Admitted Trial Exhibits (Doc. 228) reflects those erroneous statements and that the

911 transcripts did not actually go "back to the jury room[.]" *Id.* at 8. Hanan's attempt to undermine the record is unpersuasive.

Before closing arguments, the Court instructed the parties "to look through" all of the exhibits and "agree to that group of exhibits going" to the jury, as the Court did not "want anything to go back" to the jury that had not been admitted. Doc. 238, Trial Tr. Vol. 3, 194:16–23. Hanan's counsel agreed. *Id.* at 195:4. Later, the Court reminded the parties to "look through all exhibits, every one of them, and submit them" to the Court. *Id.* at 201:2–4. Again, Hanan's counsel agreed. *Id.* at 201:9.

In addition, Hanan's counsel discussed the 911 transcripts in her closing arguments. First, Hanan's counsel stated:

> [Hanan has] had a consistent story from the very beginning. From the first 911 call she made just a minute after the accident when she reported, "A big truck just hit me, and it's fleeing the scene, not stopping."

Doc. 238, Trial Tr. Vol 3, 204:1–5. Continuing, Hanan's counsel stated:

> The evidence shows you that immediately after this accident, Ms. Hanan independently calls 911 and indicates that a Crete truck hit her and is traveling away from the scene. A completely separate -- in a completely different vehicle, with a different person [(Brown)] that Ms. Hanan has never met in her life, has no association with the parties, at the same time independently calls 911 and says a Crete truck just hit a car and is leaving the scene.

*Id.* at 250:1–9. In light of the Court's repeated directions to verify the admitted exhibits, Hanan's counsel's repeated agreement to do so, and Hanan's references to the 911 transcripts in closing arguments, Hanan's assertion of a mistake on her counsel's part is doubtful.

Nonetheless, upon the filing of Hanan's motion for a new trial, the Court independently verified that the exhibit binder submitted to the jury contained Plaintiff's Exhibit 23 and that

- 12 -

Plaintiffs' Exhibit 23 contained the entirety of each 911 transcript.   Accordingly, as reflected by the Court's List of Admitted Trial Exhibits, the 911 transcripts were submitted to the jury. Doc. 228, Exhibit List, 2. Therefore, the Court did not commit the error Hanan alleges because it did not exclude the 911 transcripts.

> ii.   *Any error was harmless.*

While the Court admitted the 911 transcripts and submitted them to the jury, the Court did limit their use at trial. Insofar as Hanan challenges the Court's rulings at trial prohibiting Hanan's counsel from questioning Knapp about the details of Brown's 911 phone call, *see* Doc. 243, Pl.'s Reply, 7, any error was harmless.

Indeed, during Hanan's examination of Knapp, Defendants objected to Hanan's attempt to question Knapp with Brown's 911 transcript. Doc. 239, Trial Tr. Vol. 2-A, 39:8–11. After considering the parties' arguments, the Court prohibited Hanan's counsel from using Brown's 911 transcript to question Knapp. *Id.* at 99:17–22. However, the Court permitted Hanan to create a record and use Brown's 911 transcript to question Knapp outside of the presence of the jury. *Id.* at 102:12–104:7. Hanan's counsel quoted the portion of the transcript, where Brown stated to the 911 operator that "[w]e are traveling southbound on [Interstate] 45. This Crete truck just hit this lady and would not stop[.]" *Id.* at 102:21–23. Knapp agreed that the statement indicated that Brown "report[ed] an accident saying that [Knapp's] truck was at fault[.]" *Id.* at 103:13–16. Further, Knapp agreed that Brown's statement was "completely inconsistent with the testimony that [Knapp had] provided to the jury . . . about who was at fault or who caused the accident between [Knapp's] truck and Ms. Hanan[.]" *Id.* at 103:17–21.

Hanan argues that the Court committed prejudicial error by denying Hanan "the opportunity

- 13 -

to question witnesses with the" 911 transcripts. Doc. 221, Pl.'s Mot., 12. Indeed, Hanan claims that Brown's 911 transcript "would have corroborated [Brown's] video-deposition testimony that Mr. Knapp caused the accident." Doc. 243, Pl.'s Reply, 8. Hanan also claims that she "would have used the transcript to impeach the credibility of Mr. DiVito, Mr. Knapp, and Defendants' expert witness, to show that their testimony did not match the contemporaneous observation of a neutral third-party witness." *Id.* Finally, Hanan asserts that she "would have pointed to the transcript to rebut Defendants' repeated closing argument that the 'consistent evidence' was that Ms. Hanan, not Mr. Knapp, caused the accident." *Id.* Even if the Court erred, however, any error was harmless.

First, as explained, the entirety of the 911 transcripts, including the transcript of Brown's call, were admitted into evidence and submitted to the jury. *Supra* Section III.A.2.i. Thus, the jury had the opportunity to independently review the statements that Brown made to the 911 operator, despite Hanan's purported inability to question witnesses about Brown's transcript.

Second, Hanan's counsel presented alternative evidence to demonstrate that Brown witnessed the collision, that his account differed from Knapp's, and that he called 911. Aside from providing the location of the accident and identifying information, the only pertinent information in Brown's 911 transcript is his account of the collision and Knapp's purported attempt to flee. *See generally* Doc. 222, Pl.'s App., 7–9 (explaining to the 911 operator that "[t]his Crete truck just hit this lady and would not stop"). And indeed, Hanan presented this same account to the jury through Brown's video deposition after Brown failed to appear as a witness. *See generally* Doc. 237, Trial Tr. Vol. 2, 19:4–91:2. For example, the jury heard Brown testify that he "used [his] cell phone to call 911" after witnessing the collision between Hanan and Knapp. *Id.* at 26:21–23; *see also* Doc. 239, Trial Tr. Vol 2-A, 153:5 ("That's when I got on the phone and called 911."). His testimony

- 14 -

described Brown's account of the accident in detail and his conclusion that "the Crete Driver [(Knapp)] ma[d]e an improper lane change and then cause[d] an accident." Doc. 239, Trial Tr. Vol 2-A, 153:2–5. The jury also heard Brown's assertion that Knapp refused to stop following the collision. *Id.* at 153:11–16.

Exclusion of Brown's 911 transcript would constitute harmful error "only if exclusion affects [Hanan's] substantial rights." *Barnes v. Ergon Refin., Inc.*, 38 F.3d 568, 1994 WL 574190, at *3 (5th Cir. Oct. 4, 1994) (table opinion) (per curiam) (citing Fed. R. Evid. 103(a)). Like the Warning Notice, the Court finds that the admission of Brown's 911 transcript would not "have added appreciable weight to the contention" at issue. *Id.* (quoting *Garcia*, 618 F.2d at 271–72). Even if the purportedly excluded 911 transcript "contain[ed] some information not completely duplicative of the testimony offered by" Brown's testimony, it would not have "add[ed] any appreciable weight to [Hanan's] claim of" negligence. *See id.* Accordingly, any wrongful exclusion of the 911 transcript constitutes harmless error.

In sum, the Court did not commit the errors that Hanan alleges. Nonetheless, any error was harmless. Therefore, the Court, in its discretion, **DENIES** Hanan's request for a new trial under Rule 59(a).

B.      *Hanan's Request for Relief from Final Judgment Under Rule 60(b)(3) Is Denied.*

Finally, Hanan argues that the Court should grant a new trial under Rule 60(b)(3) because Knapp "misle[d] the jury during trial into believing that he was significantly injured when apparently he was not[.]" Doc. 221, Pl.'s Mot., 15. Indeed, Hanan takes issue with the fact that "when Mr. Knapp appeared for trial, he did so with his left arm wrapped in a cumbersome brace." *Id.* at 16. Hanan claims that "Knapp was not injured" as he represented, and that this alleged "deception

prevented Ms. Hanan from fully and fairly presenting her case at trial." *Id.* at 18–19.

Hanan makes this assertion based on what she deems "disturbing evidence" that emerged after the trial ended. *Id.* at 17. First, Hanan's attorney and a member of her trial team provide sworn declarations in which they claim that on the evening of March 10, 2021—the day that the jury rendered its verdict—they witnessed Knapp attending dinner without the use of an arm or shoulder brace, and without any limitations on his left shoulder. Doc. 222, Pl.'s App., 321, 324. After, observing Knapp at dinner, Hanan "hired an Arizona-based private investigator" to observe Knapp at his home in Arizona. Doc. 221, Pl.'s Mot., 17. The investigator filmed an instance of Knapp at his home without any brace and moving items with his left arm. *Id.* at 17–18. Hanan claims that this "provide[s] clear and convincing evidence that Mr. Knapp was not injured" and that the Court should grant a new trial. *Id.* at 18–19. Hanan is wrong.

Hanan comes nowhere close to proving by clear and convincing evidence that Knapp misrepresented his injury, let alone that such a misrepresentation affected the verdict. *See Rozier*, 573 F.2d at 1339. By alleging that "Knapp was not injured," Hanan asks the Court to accept her opinion regarding Knapp's physical health. Doc. 221, Pl.'s Mot., 18. Notably, however, none of Hanan's evidence derives from a medical professional or from someone otherwise qualified to speak to Knapp's physical health. Instead, the evidence derives solely from the observations of Hanan's trial team and a private investigator, based on two instances where the observers believed that Knapp did not "appear to be favoring his arm or in any visible pain." *Id.* at 17–18. Hanan's assertion that her legal team's personal opinions as to Knapp's health amount to "clear and convincing evidence that Mr. Knapp was not injured" at trial is utterly fanciful. *See id.* at 18.

As Defendants state, Hanan's "time and funds expounded on surveillance would have been

much better spent simply verifying Mr. Knapp's prior surgery." Doc. 241, Defs.' Br., 19. Indeed, if Hanan's counsel had attempted to confer with Defendants regarding their concerns—which they did not—the issue would likely have been quickly resolved. Defendants would have directed Hanan to Knapp's surgeon, who would have explained that he advised Knapp to wear his brace until at least March 16, 2021. *See id.* at 20.[3] Instead, however, Hanan's counsel forwent due diligence and filed the present motion, which simply asks the Court to adopt the observations and unqualified medical opinions of Hanan's trial team and private investigator. The Court will not do so.

Hanan has not shown by clear and convincing evidence that Knapp "obtained a verdict through fraud, misrepresentation or other misconduct[.]" *See Rozier*, 573 F.2d at 1339. Accordingly, in its discretion, the Court **DENIES** Hanan's request for relief from final judgment under Rule 60(b)(3).

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Hanan's Motion for New Trial Under Rule 59, and Alternative Motion for Relief from Final Judgment Under Rule 60(b)(3) (Doc. 221) in its entirety.

---

[3] Defendants provide a sworn declaration by Knapp's surgeon, attesting to this advice. Doc. 242, Defs.' App., 1319–20.

SO ORDERED.

SIGNED: July 23, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE